**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:09-cr-222-HDM-PAL |
| | ) | |
| Plaintiff/Respondent, | ) | ORDER |
| vs. | ) | |
| ANTHONY SWANSON, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |
| _____ | ) | |

Before the court is Anthony Swanson's ("Swanson") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (#175).  The government has responded (#188).  The defendant has not replied.

**FACTUAL HISTORY**

The following evidence was adduced at the trial of this matter.

In June 2007, Phillip Hanvey ("Hanvey"), a confidential informant, approached David Denton ("Denton"), a detective with the Las Vegas Metropolitan Police Department ("LVMPD").  (Trial Tr. 94,

1

97-98, 134.)   Hanvey informed Denton that he had purchased cocaine from Anthony Swanson on numerous occasions, and that he had seen Swanson carrying a firearm.  (Trial Tr. 98.)   Hanvey believed Swanson was a convicted felon who could not legally possess a firearm.  (*Id.*)   When Denton received this information, he conducted a criminal history check on Swanson and determined that he was in fact a felon.  (Trial Tr. 99.)   Hanvey pointed out Swanson's residence to Denton on June 18, 2007, and the police then completed a background investigation on Swanson and the vehicles observed at the residence.  (Trial Tr. 100-02, 142.)   The police, working with Hanvey, next conducted a "controlled buy" on June 19, 2007, during which Swanson sold Hanvey rock cocaine.  (Trial Tr. 104-14, 142.)   Following the controlled buy, Denton drafted a search warrant, which was executed on June 20, 2007.  (Trial Tr. 114.)

On June 20, 2007, police conducted a warranted search of the residence pointed out to Denton by Hanvey as Swanson's residence. (Trial Tr. 114-118, 142.)   Swanson was present, and the police recovered $1,981 in U.S. currency and 0.29 grams of rock cocaine on his person.  (Trial Tr. 117-18.)   Police also found a loaded Lorcin .380 semiautomatic chrome handgun under the bed in the master bedroom.  (Trial Tr. 206-208.)   Police further found in the master bedroom scales bearing narcotic residue, $1309 in U.S. currency, a prescription pill bottled with Swanson's name on it, and, in an adjoining bathroom only accessible through the master bedroom, a baggie containing almost an ounce of rock cocaine.  (Trial Tr. 177-79, 182-4, 197-200, 202-204.)

Following the search, Denton read Swanson his *Miranda* rights

2

and, after Swanson agreed to talk to him, interviewed Swanson about the items found on his person and in the residence. (Trial Tr. 123.) Swanson stated that all of the cocaine in the residence was his and that "he bought the cocaine for everybody to get high." (Trial Tr. 123-24.) Swanson further stated that the gun found in the residence was there for "protection," and that his prints would probably be on it because he had handled it. (Trial Tr. 124.) Swanson also identified Regina Hall ("Hall"), who was present during the search as well, as his girlfriend. (Trial Tr. 125.) He stated that when he stayed at the residence, he slept with her in the master bedroom in which the firearm and drug paraphernalia were found. (*Id.*)

Hall was also Mirandized and interviewed at the scene by Denton. (Trial Tr. 126) She stated that the gun was not hers and that Swanson brought the gun into the house for protection. (Trial Tr. 398-99.) However, at trial Hall testified that the gun was hers and Swanson never handled it. (Trial Tr. 366-68, 398-99.)

Based on the information gathered during the June 20 search, Swanson was arrested. (Trial Tr. 129.)

**PROCEDURAL HISTORY**

On March 10, 2010 a federal grand jury returned a five count superceding indictment against Swanson. (Doc. #64.) Swanson proceeded to trial, at which he was convicted of the following counts: Count One – Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1) and 924(a)(2) (Doc. #101); Count Three - Possession with Intent to Distribute a Controlled Substance (Cocaine Base), 21 U.S.C. § 841 (a)(1), (b)(1)(B)(iii) (Doc. #102); Count Four – Possession with Intent to Distribute a Controlled Substance

3

(Cocaine Base), 21 U.S.C. § 841 (a)(1), (b)(1)(B)(iii)(Doc. #103); and Count Five – Possession of a Firearm During and in Relation to a Drug Trafficking Crime, 21 U.S.C. § 841 (a)(1), (b)(1)(B)(iii) and 18 U.S.C. § 924(c)(1)(A) (Doc. #104).  The jury deadlocked on count two and the government dismissed the charge.  (Doc. ##135, 136.)

On December 14, 2010 Swanson was sentenced to 120 months of custody on count one; 360 months on counts three and four (to run concurrently with count one); and 60 months on count five (to run consecutively with counts one, three, and four), for an aggregate sentence of 420 months in custody.  (Doc. #136.)  Swanson was also sentenced to eight years of supervised release following his detention.  (*Id.*)

Swanson appealed his conviction and sentence.  (Doc. #140.)  On December 13, 2011, the Ninth Circuit Court of Appeals affirmed. *United States v. Swanson*, 461 Fed. Appx. 580 (9th Cir. 2011); Doc. #149.  Swanson petitioned the United States Supreme Court for a writ of certiorari on March 13, 2012 (Doc. #164), but his petition was denied on April 16, 2012.  *Swanson v. United States*, 132 S. Ct. 1953 (2012); Doc. #166.

Swanson then filed his (#175) motion to vacate pursuant to 18 U.S.C. § 2255 on February 5, 2013, and that motion is presently before the court.

**STANDARD**

A convicted defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose

the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.   28 U.S.C. § 2255(a); *see also United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010).

In the case at hand, the four grounds defendant Swanson alleges in his § 2255 motion are all ineffective assistance of counsel claims. (*See generally* Def. Mot.)  Ineffective assistance of counsel is a cognizable claim under § 2255. *Baumann v. United States*, 692 F.2d 565, 581 (9th Cir. 1982).  In order to prevail on a such a claim, Swanson must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, Swanson must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88.  "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986).

Second, Swanson must show that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687.  This requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding.  Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington v. Richter*, 131 S. Ct. 770, 787-88 (2011) (internal citations and punctuation

5

omitted).

**ANALYSIS**

**I. Ineffective Assistance of Counsel - "Failure to Investigate"**

Swanson alleges various ineffective assistance of counsel claims in his first ground for relief. (Def. Mot. 5, 10-11.[1])

*A. Failure to challenge the search warrant based on CI's confirmations of Swanson's photograph*

Swanson's first claim is that his attorney Michael Morey ("Morey") was ineffective when

he failed to question the Government's case-in-chief as to the Application For Search Warrant date June 20, 2007, where Det. David Denton only submitted one photo to C.I. Phillip Hanvey effectively violating Movant's due process rights and singling out Movant to C.I.

(Def. Mot. 5.)  Swanson alleges that this was "highly prejudicial" and was "beyond a mere suggestive line-up such as found in *United States v. Rogers*, 387 F.3d 925 (7th Cir. 2004)."  (Def. Mot. 20.)

Not only is *Rogers* not binding law on this court, "[t]he *Rogers* rationale," as the government points out, "has no bearing on this case."  (Gov't Opp'n 9.[2])  In *Rogers*, the Seventh Circuit Court of Appeals held that an identification was "unduly suggestive" when police put a narcotics offender in the same jail cell as a person he had previously failed to identify in a line-up, and then later relied on that offender's identification of the same person.  *Rogers*, 387 F.3d at 937.

In contrast, in the case at hand, Hanvey approached Denton and gave him information about Swanson, a man he claimed to know. (Gov't Opp'n Ex. A at 4-5; Trial Tr. 98.)  Hanvey pointed out

---

[1]  Page numbers refer to the ECF page numbers.

[2]  Page numbers refer to the ECF page numbers.

Swanson's residence to Denton.  (Gov't Opp'n Ex. A at 5; Trial Tr. 100-02.)  After doing a records check, Denton located a record of Swanson that fit Hanvey's description, and then located a picture of Swanson in the LVMPD Crime Web and showed it to Hanvey.  (Gov't Opp'n Ex. A at 5; Trial Tr. 99.)  Hanvey confirmed that the man in the photograph was in fact the Anthony Swanson about whom he had informed Denton.  (Gov't Opp'n Ex A at 5-6.; Trial Tr. 245-46.)

There was no line-up procedure involved in Hanvey's identification of Swanson, and the actions of law enforcement officials were appropriate and not unduly suggestive.  Therefore, had Morey objected to Swanson's identification, such an objection would have been without legal merit.  The Ninth Circuit has made clear that "[t]he failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) (quoting *Baumann*, 692 F.2d at 572).

Accordingly, the court denies Swanson's first ground for relief with regard to his claim that his counsel was ineffective in failing to object to the search warrant arising from Hanvey's identification of Swanson.

*B. Failure to present testimony of Regina Hall and CI Phillip Hanvey at a Pretrial Hearing*

An attorney is ineffective for failing to introduce evidence demonstrating his client's factual innocence or evidence that "raises sufficient doubt as to that question to undermine confidence in the verdict." *Avila v. Galaza*, 297 F.3d 911, 919 (9th Cir. 2002).

Swanson claims that Morey was ineffective when he failed to

present the testimony of Hall and Hanvey at an "evidentiary hearing" "long before trial" "before submitting to the Govt.'s [sic] argument." (Def. Mot. 5, 10.)  Swanson claims that, had Morey presented this testimony at a pretrial hearing, Hall would have testified that the weapon was hers, and Hanvey would have testified that he purchased drugs from someone other than Swanson and that he did so with two ten-dollar bills. (*Id.*)

Swanson has failed to show that the lack of pretrial testimony from Hall and Hanvey prejudiced his defense because both Hall and Hanvey testified at trial, so the jury was able to consider their testimony in reaching its decision.  At trial, while Hall did contradict the statements she made at the time of Swanson's arrest by stating that the gun found at the scene was hers and that Swanson never handled it (Trial Tr. 366-68, 398-99), the jury still found Swanson guilty of Counts One and Five, both of which included possession of a firearm as an element of the offense (*see* Doc. ## 64, 101, 104).  Moreover, contrary to Swanson's claims about how Hanvey would have testified at a pretrial evidentiary hearing, Hanvey testified at trial that he purchased cocaine from Swanson, rather than from someone else, during the controlled buy on June 19, 2007.[3]  (Trial Tr. 250-52.)

The court therefore denies Swanson's first ground for relief with regard to his claim that his counsel was ineffective in failing to call Hall and Hanvey as witnesses at a pretrial hearing.

---

[3]  Despite Swanson's claim that Denton "alluded" that Hanvey purchased the cocaine from Swanson with a single twenty-dollar bill as opposed to with two ten-dollar bills (Def. Mot. 10), neither Denton nor Hanvey discussed the denomination of the bills used to purchase the cocaine in their testimony. (*See* Trial Tr. 94-159, 235-60.)

*C.  Failure to present affidavits of Regina Hall and confidential informant Phillip Hanvey at Trial*

Swanson claims that Morey failed to present exculpatory affidavits from Hall and Hanvey. (Def. Mot. 10.) He claims that Hall's affidavit showed that the gun belonged to her and that she was "threatened by the police not to admit the gun was hers or she'd go to jail." (*Id.*) He claims that Hanvey's affidavit, would have shown that Hanvey purchased crack cocaine from someone else with two ten-dollar bills. (*Id.*)

Swanson has repeatedly alleged the existence of these affidavits and the failure of his counsel to present them. He first made this claim at a sentencing hearing. (*See* Doc. #152 at 6, 16.) He then raised it again in correspondence to the court dated April 24, 2012, and the affidavits' absence was discussed at a telephonic status conference on June 7, 2012. (Doc. #167.) Swanson's counsel at the time, Brenda Weksler ("Weksler"), Assistant Federal Public Defender, was instructed to retrieve the affidavits, if they existed, from Swanson's former counsel, Craig Mueller ("Meuller"). (*Id.*) Weksler was unable to produce the affidavits. (Doc. #170.) The court held another status conference on August 23, 2012, at which Mueller and Morey both reported that they had searched Swanson's files and could not locate the affidavits Swanson described. (Doc. #173.) Weksler and William Carrico ("Carrico") from the Federal Public Defender Office confirmed that they also did not have the affidavits. (*Id.*) Morey was instructed to file a written declaration with the court within thirty days, either attaching the affidavits or indicating that he did not have them. (*Id.*) Morey filed such a declaration on

9

September 11, 2012, stating that he could not find any such affidavits and had no knowledge of their existence. (Doc. #174.) Morey also noted that he had several conversations with Hall during the course of his representation of Swanson, but that he did not have any contact with Hanvey, who was a confidential informant, prior to the trial. (*Id.*)

The court cannot deem it objectively unreasonable for counsel to fail to produce affidavits he did not have. All counsel involved in Swanson's representation assured the court on multiple occasions that they did not possess and had never seen the affidavits Swanson has described. (*See* Doc. ##167 170, 173, 174.) The defense motion for discovery and identification of a confidential informant (Doc. #48) supports Morey's claims in his declarations that he had no pretrial contact with Hanvey whatsoever and did not even know Hanvey's identity until shortly before trial (Gov't Opp'n Ex. B at 2-3; Doc. #174 at 2).

The court therefore denies Swanson's first ground for relief with regard to his claim that his counsel was ineffective in failing to produce exculpatory affidavits from Hall and Hanvey.

*D. Failure to investigate movant's claims*

An attorney is also ineffective if he fails "to conduct a reasonable investigation" or to "make a showing of strategic reasons for failing to do so." *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Swanson alleges that Morey was ineffective when he failed to investigate Swanson's claims. (Def. Mot. 10-11.) Swanson alleges that along with failing to investigate Swanson's claims about the affidavits sworn to by Hall and Hanvey, Morey also failed to

10

conduct a proper inquiry into from where the money found in the 159 Barbados house and on Swanson's person came.  (Def. Mot. 10.)  He further alleges that Morey failed to challenge Swanson's constructive possession (presumably of the gun and the rock cocaine) "due to [Morey's] failure to investigate movants [sic] location in the home, for Mr. Morey never went to the home at 159 Barbados, or attempted to interview Regina Hall or Phillip Hanvey when he had two (2) affidavits in hand."  (Def. Mot. 11.)

As discussed above in *supra* section I.C. of this opinion, the record does not support the existence of the affidavits Swanson claims Morey had but never properly investigated.  Nevertheless, Morey has asserted that he had frequent contact with Hall prior to the trial (*see* Gov't Opp'n Ex. B at 2-3; Doc. #174 at 2), so Swanson's claims that Morey never interviewed Hall are unsupported. Furthermore, as discussed above, Morey maintains, and the record supports, that because of Hanvey's status as a confidential informant, Morey did not know Hanvey's identity until shortly before trial and did not have Hanvey's contact information.  (Gov't Opp'n Ex. B at 2-3; Doc. #174 at 2; Doc. #148.)  It is thus not unreasonable that Morey, as he fully admits, had no pretrial contact with Hanvey.  (Gov't Opp'n Ex. B at 2-3; Doc. #174 at 2.)

With regard to the investigation of origins of the money found during the June 20, 2007 search, Swanson claims that a proper investigation would have yielded exculpatory evidence.  (Def. Mot. 10.)  He has attached a "Win/Loss Statement" for the year 2007 from Station Casinos in Las Vegas (Def. Mot. 17) and claims that the statement "prove[s] where he acquired his money" (Def. Mot. 13). However, Morey explains in his declaration that he

11

1        was told by the defendant the money was from winnings at
2  various casinos.  When questioned what casinos the winnings
   came from, the defendant was unable to articulate, claiming
3  the passage off [sic] time from the arrest hindered his memory
   and that it was unlikely any receipts would exist.

4  (Gov't Opp'n Ex. B at 3.)  Given these circumstances, it is not

5  objectively unreasonable that Morey would not have further

6  investigated Swanson's claims that the money came from casino

7  winnings.  Additionally, if Swanson hopes to prove that Morey was

8  ineffective by suggesting that if Morey had further investigated,

9  he would have uncovered the Win/Loss Statement Swanson has attached

10  to his motion, his argument is misguided; rather than showing an

11  alternate means through which Swanson could have procured the money

12  found during the June 20, 2007 search, the Statement instead

13  indicates that Swanson suffered a year end total loss of $33,822.76

14  in 2007.  (Def. Mot. 17.)

15       Furthermore, while Swanson claims that Morey's failure to

16  investigate Swanson's "location in the home" resulted in a further

17  failure to "argue the constructive possession," Swanson has

18  provided no evidence whatsoever that additional investigation of

19  the 159 Barbados house would have yielded any exculpatory

20  information regarding Swanson's possession of the drugs or the

21  weapon recovered in the home.  (Def. Mot. 11; *see generally* Def.

22  Mot.)  Swanson does state later in his motion that he actually

23  "lived at 2352 Bridal Wreath, and not 159 Barbados . . . [and]

24  [m]ere presence does not come close to constructive possession."

25  (Def. Mot. 21 (emphasis in original).)  However, even if further

26  investigation by Morey would have shown that Swanson did in fact

27  live elsewhere, Swanson still admitted to Denton immediately

28  following the search that he had bought the cocaine, that he had

handled the gun, and that he stayed in the master bedroom with Hall when he stayed at the 159 Barbados residence. (Trial Tr. 123-125.) As Jury Instruction # 18 for Swanson's trial made clear, domicile is not an element of possession. ("[A] person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it." (Doc. #100 at 19).) Thus, even if Morey had uncovered evidence that Swanson was not officially domiciled at 159 Barbados, such evidence would not negate the jury verdict in light of Swanson's admissions to Denton.

The court therefore cannot find that Morey failed "to conduct a reasonable investigation" with regard to witnesses Hall and Hanvey, the money found during the search, or Swanson's "location in the [159 Barbados] home." *Sanders*, 21 F.3d at 1456; Def. Mot. 11. Swanson has not shown that Morey's investigative efforts fell below an objective standard of reasonableness, nor has he shown that Morey's alleged lack of investigation prejudiced Swanson's defense in any way.

Accordingly, the court denies Swanson's first ground for relief with regard to his claim that his counsel was ineffective in failing to properly investigate Swanson's claims.

*D. Failure to question judicial signatures*

Swanson claims that Morey was ineffective in failing to challenge and further investigate what he claims are "two (2) very distinct and different signatures by purportedly the same judge" on the "Application for Search Warrant and Order to Seal." (Def. Mot. 10-11.) Swanson has attached to his motion an order sealing Denton's affidavit, which was submitted by the government in

13

seeking a search warrant, and the last page of the search warrant allowing the police to search the 159 Barbados residence, both dated June 20, 2007. (Def. Mot. 18-19.) Both pages contain a judicial signature. These documents also appear elsewhere in the record within ECF Document Number 57-2.

The court does not agree with Swanson's assertions that "[o]ne can simply look at the signatures" to conclude that at least one of them must be a forgery. (Def. Mot. 11.) The signatures appear substantially similar to the court. Swanson has therefore failed to show that Morey did not conduct a reasonable investigation of his case by failing to "question" the signatures, because Morey's behavior in not investigating the authenticity of the signatures does not fall below an objective standard of reasonableness.

The court denies Swanson's first ground for relief with regard to his claim that his counsel was ineffective in failing to question the judicial signatures on the June 20, 2007 search warrant and order.

**II. Ineffective Assistance of Counsel – "Not Knowing Relevant Law"**

Swanson alleges further ineffective assistance of counsel claims in his second ground for relief. (Def. Mot. 6, 11-12.)

*A. Failure to move for mistrial over "lost drugs"*

Swanson argues that Morey was ineffective in "fail[ing] to move for a mistrial over the integrity of the 'lost' drugs." (Def. Mot. 6.) Swanson claims that Kushboo Narechania, a Las Vegas Metropolitan Police Department forensic scientist who testified at trial, "would not attest that it was the same drugs, yet Mr. Morey did nothing except stipulate." (*Id.*) He further argues that "[a]ny time a crucial piece of evidence 'disappears' without a

14

chain of custody it is tainted and a stipulation cannot remove the taint." (*Id.*)

In fact, no drugs were "lost." At trial, when the government questioned Kushboo Narechania, the government's Exhibit 7-C was initially unavailable. (Trial Tr. 266.) However, after a brief recess, the court convened without the jury, at which point the government explained that all physical evidence had been locked in the victim witness coordinator's secure area in the courthouse during an earlier recess, and that Exhibit 7-C was initially left locked in this secure area accidentally after the recess. (Trial Tr. 267-68.) As this court stated at the time, "[t]he record . . . reflect[s] that [Exhibit 7-C] has been kept in the chain, simply was not brought back up to the courtroom." (Trial Tr. 268.) Morey did not in fact stipulate to the government's explanation, but did not object. (*Id.*)

Swanson fails to show that Morey's lack of objection regarding Exhibit 7-C was objectively unreasonable, and also fails to show any prejudice to his defense. Even if Morey had objected, Swanson has presented no evidence that such an objection would have created a "reasonable probability . . . [that] the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Morey's lack of objection mainly served to save time; if necessary, the government could have simply called witnesses to testify regarding the fact that the Exhibit 7-C had been left in a secure, locked area for longer than intended, and there is no reason to believe that such witnesses would not have seemed credible to the jury.

The court therefore denies Swanson's second ground for relief with regard to his claim that his counsel was ineffective in

failing to move for a mistrial when the government left one of its exhibits in a locked secure area after a recess instead of immediately bringing that exhibit up to the courtroom.

*B. Failure to challenge the Indictment on the grounds that Swanson had no violent criminal history*

Swanson alleges that Morey was ineffective in failing to "question" why the government "move[d] for a federal indictment against Movant as a felon in possession, when <u>NOT</u> one time has Movant ever been found guilty or pled guilty to any gun or gun related charge." (Def. Mot. 6 (emphasis in original).) Swanson also questions "their basis for Jurisdiction [sic] as per *United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2004)." (Def. Mot. 12.)

However, no prior charge or conviction of a gun or gun-related charge is necessary for a conviction under 18 U.S.C § 922(g)(1). As to why Swanson was "single[d] out" in being charged with a federal gun possession charge, as he claims, prosecutorial discretion "is an integral part of the criminal justice system, and is appropriate, so long as it is not based on improper factors.'" *United States v. Banuelos-Rodriguez*, 215 F.3d 969, 976 (9th Cir. 2000) (quoting *United States v. LaBonte*, 520 U.S. 751, 762 (1997)). Swanson has not suggested that any improper reasons for prosecutorial discretion, such as discrimination on the basis of race or religion, occurred in his case. *See Wayte v. United States*, 470 U.S. 598, 608 (1985); *see* Def. Mot. 6-7, 11-12. Moreover, *Perlaza* was a Ninth Circuit case that dealt with jurisdictional questions related to the interception of a speedboat carrying cocaine in the Pacific Ocean off the coast of South America; it has no bearing on the case at hand. *See generally*,

*Perlaza*, 439 F.3d 1149.

Accordingly, the court denies Swanson's second ground for relief with regard to his claim that his counsel was ineffective in failing to challenge the indictment on the grounds that Swanson had no violent criminal history.

*c. Failure to object or move for a mistrial over "vouching" in Government's closing argument*

Swanson claims that Morey was ineffective in failing to object or move for a mistrial when the government "vouched" for Denton in its closing statement.  (Def. Mot. 12.)  Swanson cites to *United States v. Rudberg*, a Ninth Circuit case that dealt with prosecutorial vouching.  *Id.*; *United States v. Rudberg*, 122 F.3d 1199 (9th Cir. 1997).

During the Swanson's trial, the government stated in closing,

> I was talking about the confession about the gun to Detective Denton about how he said I might have handled it, my fingerprints might be on it, whatever your recollection of his exacts words are.  And I would submit to you, ladies and gentlemen, that if he were lying, he'd come up with a much better lie than that.  He could have taken the stand and said Swanson said to me it's my gun and I shoot drug dealers with it.  It's sort of the way the confession comes out that allows you to conclude that Detective Denton is telling the truth.

(Trial Tr. 428.)  After the Government concluded, "[e]ven though there were not any objections . . . [the court gave] two cautionary instructions . . . with respect to the [government's] closing argument."  (Trial Tr. 432.)  The court instructed that

> there was a comment made in final argument in which, and I quote, I submit to you that the detective was telling you the truth.  Again, the government cannot vouch for a witness.  You have to decide the credibility of the witnesses.  So, to that extent, I strike that statement and advise you that you must make the decision as to who is telling the truth and who is not telling the truth in connection with this case, and I so instruct you sua sponte.

(*Id.*)

In determining whether there is "a reasonable probability that, but for [Morey's failure to object or move for mistrial due to the prosecutorial vouching in the Government's closing], the result of the proceeding would have been different," the court must consider what would have transpired had Morey made such an objection or motion. *Strickland*, 466 U.S. at 687. Even without Morey's objection, the court gave a curative instruction;  Morey's lack of objection to the vouching therefore had minimal, if any effect, on the outcome of the trial.  (Trial Tr. 432.) Furthermore, "[b]ecause many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct" and does therefore does not constitute ineffective assistance of counsel.  *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Molina*, 934 F.2d 1440, 1447-48 (9th Cir. 1991).

Additionally, when determining if there has been improper vouching, the inquiry is into

> the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall.

*Rudberg*, 122 F.3d at 1204 (quoting *Necoechea*, 986 F.2d at 1278). In Swanson's case, while the testimony of the relevant witness, Denton, was very important to the case, the prosecutor did not

"impl[y] . . . [any] extra-record knowledge of or the capacity to monitor the Denton's truthfulness," nor did he make "any inference that the court [was] monitoring [Denton's] truthfulness." *Id.* Additionally, the court gave a prompt and effective curative instruction, which neutralized any damage to the jury caused by the prosecutor's statements. *Id.; see also United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990).

Because Morey's behavior in not objecting or moving for a mistrial did not fall below an objective standard of reasonableness, and there is no reasonable probability that doing so would have resulted in any different outcome for Swanson, the court hereby denies Swanson's second ground for relief with regard to his claim that his counsel was ineffective in failing object or move for mistrial in response to prosecutorial vouching.

## III. Ineffective Assistance of Counsel - "Terry Jones"

Swanson alleges that he "<u>Never</u> hired Terry Jones or acquiesced [sic] to have Mr. Jones represent him." (Def. Mot. 13 (emphasis in original).)" He claims that he "never signed a waiver to have Terry Jones represent him at a critical stage of criminal proceedings," and that this amounts to a "denial of counsel" because the counsel he did "retain[] . . . was not present." (*Id.*) He also states that Terry Jones ("Jones") "did nothing for me." (*Id.* at 7.) He cites to *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) and *Cordova v. Baca*, 346 F.3d 924 (9th Cir. 2003). (Def. Mot. 13.)

In an affidavit attached to the government's opposition, Terry Jones states, and the record supports, that she works at the Law Offices of Mueller, Hinds & Associates, CHTD and was working there

at the time that the law firm represented Anthony Swanson.  (Gov't Opp'n Ex. C at 1.)  She maintains that she "was not personally hired by Anthony Swanson, but worked briefly on the case in her capacity as an associate attorney for the firm."  (*Id.* at 2.) Swanson's representation was primarily handled by Mueller and Morey, but Jones "made a couple of pre-trial court appearances when the parties were attempting to negotiate a guilty plea agreement" and also "visited Anthony Swanson while he was in federal custody . . . to discuss the terms of the guilty plea agreement proffered by the Government."  The government has noted in its opposition that there is a designation of retained counsel and appearance praecipe for Jones in the record (Doc. #40), and that Jones represented Swanson at the December 18, 2009 arraignment and plea on the superceding indictment (*see* Doc. ##41, 45).

Swanson has not actually alleged any specific error or deficiency with regard to Jones' representation in his case. Furthermore, any prejudice to Swanson's defense resulting from Jones' representation at the arraignment and plea on the superceding indictment would have been ameliorated by Morey's representation at the arraignment and plea on the second superceding indictment.  (Doc. ##64, 68.)

The court therefore denies Swanson's third ground for relief.

**IV. Ineffective Assistance of Counsel – "Sentencing"**

Swanson alleges that Carrico provided ineffective assistance of counsel when he represented Swanson at sentencing.

*A.  Failure to argue that prior drug offenses should have been counted as a single offense*

Swanson argues that Carrico was ineffective when, at

sentencing, he failed to argue that Swanson's two prior drug convictions should have been counted as one offense for the purposes of career offender enhancement under U.S.S.G. § 4A1.2(a)(2).[4]  (Def. Mot. 7, 13.)  Swanson argues that he "was sentenced to . . . [the] charges on the same day . . . requiring a designation of a single offense."  (Def. Mot. 13.)

The text of § 4A1.2(a)(2) reads:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

Swanson seems to be arguing that his offenses should have been counted as a single sentence due to the wording of § 4A1.2(a)(2)(B).  However, the language is clear that prior sentences are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest, and § 4A1.2(a)(2)(A) and § 4A1.2(a)(2)(B) apply only if there is no intervening arrest.  *Id.*

In Swanson's case, as the government points out in its response, there was an intervening arrest between the two offenses. Swanson was arrested on February 9, 2003 for Possession of a Controlled Substance with Intent to Sell under N.R.S. § 453.337

---

[4]  Swanson actually cites to U.S.S.G. § 4A1.1.2(a)(2), which does not exist.  (Def. Mot. 7, 13.)  However, it is clear from his argument that he is actually referring to U.S.S.G. § 4A1.2(a)(2).  "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  Accordingly, the court will construe Swanson's fourth ground for relief as referencing U.S.S.G. § 4A1.2(a)(2).

(Presentence Investigation Report ("PSR") ¶ 38) and was then arrested on May 25, 2003 for Possession of a Controlled Substance with Intent to Sell under N.R.S. § 453.3385 (PSR ¶ 39).  (Gov't Opp'n 19.)  Swanson was arrested for the first offense prior to committing the second offense.  The parties confirmed at sentencing that the were no factual errors contained in the PSR.  (Doc. # 135.)  Therefore, Swanson's prior drug offenses were rightfully counted as two separate offenses at sentencing.  *See* U.S.S.G. § 4A1.2(a)(2).

As stated earlier in this opinion, "[t]he failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Shah*, 878 F.2d at 1162.  Accordingly, the court denies Swanson's fourth ground for relief with regard to his claim that Carrico was ineffective in failing to argue at sentencing that Swanson's prior drug convictions should have been counted as one offense.

*B.  Failure to argue that prior drug offenses were not crimes of violence or serious offenses*

Swanson claims that Carrico was ineffective in "fail[ing] to argue the two (2) [sic] drug charges were not crimes of violence or serious offenses." (Def. Mot. 7.)  Construing Swanson's motion liberally,[5] he seems to be arguing that his prior drug offenses do not constitute offenses that can be counted when determining career offender status under the sentencing guidelines, and that Carrico failed to argue this point at sentencing.

Swanson is incorrect that his prior drug offenses should not have been counted in determining career offender status because

---

[5]   *See supra* note 4.

they are not "crimes of violence or serious offenses."  The term

"serious drug offense" comes from the Armed Career Criminal Act,

which was not invoked in Swanson's sentencing.  *See* 18 U.S.C. §

924(e)(1), (2)(A); Doc. #153 (Sentencing Tr.).  Instead, Swanson

was sentenced as a career offender under § 4B1.1 of the Federal

Sentencing Guidelines.  *See* U.S.S.G. § 4B1.1; Doc. #153.  Moreover,

while "crimes of violence" do qualify as offenses that can be

counted toward career offender status, Swanson's drug offenses were

counted toward career offender status not because they were

considered crimes of violence but because they were considered

"controlled substance offenses."  *See* U.S.S.G. §§ 4B1.1; 4B1.2(b);

PSR ¶¶ 38-39; Doc. #153 at 46.  The definition of a controlled

substance offense under the Federal Sentencing Guidelines is

> an offense under federal or state law, punishable by
> imprisonment for a term exceeding one year, that prohibits the
> manufacture, import, export, distribution, or dispensing of a
> controlled substance (or a counterfeit substance) or the
> possession of a controlled substance (or a counterfeit
> substance) with intent to manufacture, import, export,
> distribute, or dispense.

U.S.S.G. § 4B1.2(b).  The statutes Swanson was convicted under,

N.R.S. §§ 453.337 and 453.3385, clearly meet this definition, as

both are punishable by imprisonment exceeding one year and both

include possession of a controlled substance and intent to sell as

elements of the offense.  *See* N.R.S. §§ 453.337, 453.3385.

Swanson is correct that Carrico did not argue at sentencing

that Swanson's offenses could not be counted toward career offender

status under the Federal Sentencing Guidelines, but the court

cannot agree that this constitutes ineffective assistance of

counsel.  Presumably understanding that there was no merit to such

an argument, Carrico acknowledged at sentencing that his client

qualified as a career offender, but asked the court to sentence Swanson outside the career offender guidelines. (Doc. #153 at 4-13.) Once again, "[t]he failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Shah*, 878 F.2d at 1162.

Accordingly, the court denies Swanson's fourth ground for relief with regard to his claim that Carrico was ineffective in failing to argue at sentencing that Swanson's prior drug convictions were not crimes of violence or serious offenses.

*C.   Failure to present affidavits proving innocense*

Swanson argues that Carrico "failed to produce the 2 [sic] affidavits at my sentencing, for mitigation, proving my innocence." (Def. Mot. 7.) While Swanson does not say so specifically, it appears that Swanson is referring to the same two affidavits he alleges Morey failed to produce at trial, discussed in *supra* section I.C. of this opinion.

As reviewed by the court in *supra* section I.C., the record does not support the existence of these affidavits, and all attorneys involved in Swanson's case have stated on the record that they have never seen the affidavits, have no knowledge of their existence, and do not have the affidavits in their possession. Carrico, in an affidavit submitted with the government's response, has further stated, "[Swanson] is correct in that I did not produce any affidavits for any purpose . . . I have no recollection of having access to any witness who would have proved Mr. Swanson's innocence at the time of sentencing." (Gov't Opp'n Ex. D at 2.) As noted above, it is not objectively unreasonable to fail to produce affidavits one does not have.

The court denies Swanson's fourth ground for relief with regard to his claim that Carrico was ineffective in failing to produce two affidavits to prove Swanson's innocence at sentencing.

## V. Ineffective Assistance of Counsel - Jury Question

Swanson claims that all of his defense and appellate counsel were ineffective in "fail[ing] to move the Court for a mistrial as to the question of reasonable asked about by the petite Jury, while deliberating." (Def. Mot. 24.) Swanson further argues that "when a petite jury is questioning reasonable the government failed to convince the petite jury that Anthony Swanson was guilty beyond a reasonable doubt." (*Id.*)

As discussed by the government in its response, the jury did send a note during deliberation, asking the court to clarify the elements of Count Five ("Possession of a Firearm During and in Relation to a Drug Trafficking Crime"). (Trial Tr. 467.) The jury wanted clarification as to whether the prosecution had to prove each of elements beyond a reasonable doubt, or whether proving only possession or only the "in relation to the crime" beyond a reasonable doubt was enough. (Trial Tr. 467-68.) The court discussed the note with counsel outside the presence of the jury, and then explained the necessity of proving each of the elements beyond a reasonable doubt to the jury. (Trial Tr. 467-72.)

Swanson has shown neither that Carrico was objectively unreasonable in failing to move for a mistrial, nor that any prejudice to his case resulted due to this failure. As already noted several times in this opinion, "[t]he failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Shah*, 878 F.2d at 1162. There was no legal argument

to be made for a mistrial, as the jury's question was reasonable and the court's response was appropriate.  If anything, the question and the court's response served only to make more clear to the jury how high the burden of proof was on the government, which could only have helped Swanson's defense rather than prejudiced it.

The court therefore denies Swanson's fifth ground for relief.

**CONCLUSION**

In accordance with the foregoing, the plaintiff's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (#175) is hereby **DENIED.**

**IT IS SO ORDERED.**

DATED: This 15th day of May, 2014.

_____
UNITED STATES DISTRICT JUDGE